```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
JOSEPH DAVIS,                                               :
                              Plaintiff,                    :
                                                            :
             -against-                                      :
                                                            :
CITY OF NEW YORK, et al.,                                   :
                              Defendants.                   :
                                                            :
------------------------------------------------------------ X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: March 28, 2017

15 Civ. 5900 (LGS)

OPINION AND ORDER

LORNA G. SCHOFIELD, District Judge:

Plaintiff Joseph Davis brings this action against Defendant Police Officer David Terrell, asserting claims under 42 U.S.C. § 1983 for false arrest and malicious prosecution.[1] Before the Court is Defendant's motion for summary judgment. For the following reasons, the motion is granted.

I.   BACKGROUND

The following facts are taken from the parties' statements pursuant to Local Civil Rule 56.1 and the parties' submissions on this motion. For the purposes of this motion, all factual disputes are resolved, and all reasonable inferences are drawn, in Plaintiff's favor. *See Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 71–72 (2d Cir. 2016).

On the morning of January 18, 2013, Plaintiff left his apartment for a short time. Jahard White, a family friend who was staying with Plaintiff, was inside the apartment when Plaintiff left. When Plaintiff returned, White was gone and all of Plaintiff's footwear was missing. Plaintiff immediately ran downstairs and went outside, where he found a shirt, sweater and baseball cap that he recognized as his lying on the ground. He saw White and two unidentified

---

[1] By stipulation and order dated March 16, 2017, Plaintiff voluntarily dismissed his claims against Defendant City of New York.

males running away from his building and carrying some of his belongings. Plaintiff chased the three men and yelled at them. At one point during the chase, one of the men turned around and lifted his shirt to display a gun.

Plaintiff then called 911 and reported that he had been robbed. As reflected in a recording and transcript of the call, Plaintiff told the 911 operator that "[t]he guys put a gun to me and robbed me." To confirm, the operator asked Plaintiff, "And the guy pulled a gun at you and robbed you?" Plaintiff responded, "Yes."

At approximately 10:18 A.M., Defendant and his partner received a radio transmission of a 911 call reporting a robbery at gunpoint. A robbery at gunpoint is considered a "priority job," so Defendant and his partner responded to the caller's location immediately.

Approximately two minutes after Plaintiff placed the 911 call, Defendant and his partner arrived at Plaintiff's location. Defendant observed clothes on the sidewalk. Plaintiff, who had circled back toward his building after chasing the men, was standing in front of a nearby supermarket and speaking to a security guard whom Plaintiff believed saw part of the robbery. Plaintiff flagged down Defendant and told him that the clothes on the sidewalk were his and that he had been robbed of his clothes. Plaintiff also told Defendant that the security guard may have witnessed some of the incident, but Defendant's partner said that he did not care and told Plaintiff to get into the police car. With Plaintiff in the police car, Defendant drove to Plaintiff's apartment building and waited for another police car to arrive.

Plaintiff asked Defendant to take him to his apartment so that they could see what was missing, but Defendant made Plaintiff stay in the lobby of the building and did not go to Plaintiff's apartment. Defendant and another police officer spoke to the building's superintendent, who showed them surveillance video from the building. The surveillance video

showed Plaintiff exiting the building and, while he was away, two unidentified men arriving, ringing the bell and being granted entry to the building.  Video from another surveillance camera posted in an interior hallway showed three men exiting Plaintiff's apartment with clothing and descending the building's stairs.  The videos also showed Plaintiff returning to his apartment via the elevator at the same time the three men were going down the stairs.

After viewing the surveillance videos, Defendant handcuffed and arrested Plaintiff.  Defendant Terrell prepared an arrest report, identifying the charge as "PL 240.50 03A" and stating, "Deft [Davis] made 911 call stating he was robbed at gunpoint.  Upon further investigation the crime didn[']t occur.  Deft stated he made false call because he wanted cops to come faster."  Defendant swore to a criminal complaint charging Davis with violating N.Y.P.L. § 240.50(3) for falsely reporting an incident.  In the Complaint, Defendant Terrell stated that, after Plaintiff was arrested, Plaintiff said:

> I swear to you, I am so sorry.  I just wanted to get my stuff back.  I was robbed beforehand and the cops never showed up.  Someone told me to say a gun next time and cops would show up faster.  Can't you let me go home now that I've told you the truth?

Plaintiff denies that he made this statement.

Plaintiff was held in custody from his arrest until his arraignment, and was released at approximately 11:54 P.M. on January 18, 2013, approximately 13 hours after his arrest.  On September 24, 2014, the District Attorney dismissed the charge against Plaintiff, in part because Defendant would not cooperate with the prosecutors.

## II.   STANDARD

The standard for summary judgment is well established.  Summary judgment is appropriate where the record before the court establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of informing the court of the basis for the summary judgment motion and identifying those portions of the record that demonstrate the absence of a genuine dispute as to any material fact.  Fed. R. Civ. P. 56(c)(1); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Victory v. Pataki*, 814 F.3d 47, 58–59 (2d Cir. 2016).  Courts must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor.  *See Wright*, 831 F.3d at 71–72.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S at 248; *accord Pippins v. KPMG, LLP*, 759 F.3d 235, 252 (2d Cir. 2014).

## III.  DISCUSSION

Defendant's motion for summary judgment is granted because the undisputed facts show that Defendant had probable cause for the arrest and the criminal complaint, and in any event, is entitled to qualified immunity on both of Plaintiff's claims.

### A.  Probable Cause

Probable cause is a complete defense to a false arrest claim, and continuing probable cause is a complete defense to a malicious prosecution claim.  *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014).  Probable cause to arrest exists where "the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  *Dancy v. McGinley*, 843 F.3d 93, 107 (2d Cir. 2016).  "Probable cause is

determined on the basis of facts known to the arresting officer at the time of the arrest." *Shamir v. City of New York*, 804 F.3d 553, 557 (2d Cir. 2015) (internal quotation marks omitted). "[W]here there is no dispute as to what facts were relied on to demonstrate probable cause, the existence of probable cause is a question of law for the court." *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007).

Here, Plaintiff was arrested for and charged with violating of N.Y.P.L. § 240.50(3), which provides that:

> A person is guilty of falsely reporting an incident in the third degree when, knowing the information reported, conveyed or circulated to be false or baseless, he or she:
>
> . . .
>
> 3. Gratuitously reports to a law enforcement officer or agency (a) the alleged occurrence of an offense or incident which did not in fact occur; or (b) an allegedly impending occurrence of an offense or incident which in fact is not about to occur; or (c) false information relating to an actual offense or incident or to the alleged implication of some person therein[.]

Calls to 911 can qualify as "reports to a law enforcement officer or agency." *See, e.g.*, *People v. Ellis*, 908 N.Y.S.2d 687, 688 (1st Dep't 2010) ("The evidence established that defendant's 911 call in which he reported an assault that did not occur was a gratuitous report within the meaning of Penal Law § 240.50(3)."); *People v. Brazier*, 5 N.Y.S.3d 329 (N.Y. App. Term. 2014) (affirming conviction under § 240.50(3) based on 911 calls reporting an assault that did not occur).

The undisputed facts show that Defendant had probable cause to arrest Plaintiff for violating N.Y.P.L. § 240.50(3). At the time of Plaintiff's arrest, Defendant knew the following: he was responding to a 911 call about a robbery at gunpoint; Plaintiff said that he had been robbed of his clothes and asked Defendant to take him to his apartment to see what was missing;

and the surveillance videos from Plaintiff's building showed that Plaintiff never encountered the alleged robbers face to face inside the building. The surveillance videos were sufficient to warrant a person of reasonable caution to believe that Plaintiff knowingly fabricated the report that he had been robbed at gunpoint.. Because the undisputed facts show that Defendant had probable cause to arrest Plaintiff, Defendant is entitled to summary judgment on the false arrest claim.

The undisputed facts also show that Defendant had probable cause to charge Plaintiff with a violation of N.Y.P.L. § 240.50(3)(c). Probable cause to charge is analyzed separately from probable cause to arrest because the former standard is "slightly higher," *see Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013), and is measured from the time the prosecution commences, *Rothstein v. Carriere*, 373 F.3d 275, 292 (2d Cir. 2004). Accordingly, probable cause to charge exists where there are "such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty," *Stansbury*, 721 F.3d at 95, accounting for any new information that surfaced since the time of the arrest, *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 572 (2d Cir. 1996). A reasonably prudent person who had viewed the surveillance videos would believe that Plaintiff knowingly fabricated the armed robbery report, and nothing in the record suggests that any contrary information came to light between the time Plaintiff was arrested and the time he was charged. Defendant therefore had probable cause to charge Plaintiff for violating N.Y.P.L. § 240.50(3)(c) and is entitled to summary judgment on the malicious prosecution claim.

### B. Qualified Immunity

To the extent there is any question about the existence of probable cause that would warrant a jury trial, Defendant is entitled to summary judgment on a second ground -- qualified

immunity.  "The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotation marks omitted).  Where there is no dispute as to the relevant facts, the applicability of qualified immunity is a question of law for the court to decide.  *Compare Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir. 2003) ("[T]he ultimate legal determination of whether qualified immunity attaches to a law enforcement agent's actions is a question of law better left for the court to decide." (internal quotation marks omitted)), *with Taravella v. Town of Wolcott*, 599 F.3d 129, 135 (2d Cir. 2010) (noting that qualified immunity presents "mixed question of law and fact," and "[a]lthough a conclusion . . . as a matter of law may be appropriate where there is no dispute as to the material historical facts, if there is such a dispute, the factual question must be resolved by the factfinder" (internal quotation marks omitted)).

To receive qualified immunity on a claim for false arrest or malicious prosecution, an officer must show only "arguable" probable cause.  *See Betts*, 751 F.3d at 83 ("Plaintiff's false arrest, false imprisonment, and malicious prosecution claims . . . turn on whether the defendant officers' probable cause determination was objectively reasonable -- that is, whether there was 'arguable' probable cause to arrest.").  Arguable probable cause "exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met."  *Dancy*, 843 F.3d at 107 (internal quotation marks omitted).

The undisputed facts, discussed above, show that Defendant had at least arguable probable cause to arrest and charge Plaintiff with violating N.Y.P.L. § 240.50(3).  Defendant therefore is entitled to qualified immunity on both of Plaintiff's claims.

Plaintiff's contrary arguments are not persuasive.  First, Plaintiff argues that the allegedly fabricated confession Defendant included in the criminal complaint defeats qualified immunity on the malicious prosecution claim.  Fabrication of evidence is a separate claim from malicious prosecution, *see Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129–30 (2d Cir. 1997), and will not defeat qualified immunity if arguable probable cause to charge exists independent of the allegedly fabricated evidence.  *See Hoyos v. City of New York*, 650 F. App'x 801, 802–03 (2d Cir. 2016) (summary order) ("[Plaintiff] contests the notion that probable cause is a complete defense to a malicious prosecution claim when allegedly fabricated evidence is involved . . . . [T]he district court committed no error, much less clear error, in not making an exception to the probable cause defense to a malicious prosecution claim."); *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012) (summary order) (where defendant allegedly fabricated evidence, holding that probable cause existed and barred malicious prosecution claim); *Morse v. Spitzer*, No. 07 Civ. 4793, 2012 WL 3202963, at *6 (E.D.N.Y. Aug. 3, 2012) (even where a question of fact exists as to fabrication of evidence, "a police officer is entitled to qualified immunity if, based on the undisputed facts available to the officer at the time the prosecution was initiated, it was objectively reasonable for the officer to believe he had probable cause to prosecute").  Because arguable probable cause to charge existed based on the undisputed facts known to Defendant -- excluding the allegedly fabricated confession -- Defendant is entitled to qualified immunity on the malicious prosecution claim.

Second, Plaintiff argues that Defendant did not have arguable probable cause as to the intent element of § 240.50(3)(c), which requires that the false report be made "knowing the information reported, conveyed or circulated to be false or baseless."  Plaintiff relies primarily on *Brewton v. City of New York*, 550 F. Supp. 2d 355 (E.D.N.Y. 2008), to make this argument.  In

8

*Brewton*, the court held that the defendant did not have probable cause as to the intent element of § 240.50(3)(c) because the defendant "did not have any information to support an inference that [the plaintiff] knew [her ex-boyfriend] was out of jail at the time of the phone call and, thus, knowingly provided false information" when she reported that she received a phone call from her ex-boyfriend in jail.  550 F. Supp. 2d at 367.  In contrast to the identity and location of the caller in *Brewton*, whether or not the robbery at issue here was at gunpoint was something Plaintiff definitely would have known.  Thus, once Defendant had arguable probable cause to conclude that the armed robbery report was false, he had arguable probable cause to conclude that Plaintiff had made the report knowing it was false.

Finally, Plaintiff argues that several factual disputes preclude the application of qualified immunity.  Two of these factual disputes are irrelevant to the qualified immunity analysis.  Whether Plaintiff told Defendant that Plaintiff was robbed at gunpoint inside of the apartment makes no difference because, based on the undisputed facts, Defendant reasonably could have inferred that the reported robbery was the taking of Plaintiff's clothes from his apartment and that Plaintiff was not present at the time.  Although Plaintiff testified in his deposition that one of the robbers allegedly displayed a gun while Plaintiff was chasing them outside, there is no evidence in the record that Plaintiff explained that to Defendant on the day of the incident.  "Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest."  *Ricciuti*, 124 F.3d at 128.  Likewise, it does not matter whether Defendant referred to Plaintiff as "gay" because "the Supreme Court has stated that 'a defense of qualified immunity may not be rebutted by evidence that the defendant's conduct was . . . improperly motivated.'"

*Doninger v. Niehoff*, 642 F.3d 334, 349 (2d Cir. 2011) (quoting *Crawford–El v. Britton,* 523 U.S. 574, 588 (1998)).

The point at which Plaintiff was detained for purposes of the Fourth Amendment is relevant, but it occurred after Defendant knew enough facts to have arguable probable cause to arrest Plaintiff. "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person" within the meaning of the Fourth Amendment. *Terry v. Ohio*, 392 U.S. 1, 16 (1968).

> A seizure does not occur simply because a police officer approaches an individual and asks a few questions. However, a seizure does occur when, by means of physical force or show of authority, a police officer detains a person such that a reasonable person would have believed that he was not free to leave.

*Brown v. City of Oneonta*, 221 F.3d 329, 340 (2d Cir. 2000) (internal quotation marks and citations omitted). "Whether a seizure occurred is a question of law . . . ." *Id.* Here, the undisputed facts establish that Plaintiff was not "seized" until Defendant handcuffed and placed him under arrest because a reasonable person in Plaintiff's position would have believed he was free to leave until that point. Although Defendant or his partner told Plaintiff to get into their police car and, later, to wait in the lobby of the apartment building with several other police officers, Defendant had summoned the police to respond to an armed robbery. A reasonable person in Plaintiff's position would have thought that the officers' instructions were for his own safety and would have felt free to leave if he so wanted. *Cf. James v. City of Wilkes-Barre*, 700 F.3d 675, 682–83 (3d Cir. 2012) (holding that mother who called 911 and reported that her daughter was contemplating suicide was not seized within the meaning of the Fourth Amendment because although responding police officers urged her to accompany her daughter in the ambulance, she was free to leave at any time). This changed only when Defendant

handcuffed Plaintiff, by which point Defendant had viewed the surveillance videos that provided arguable probable cause to arrest.

Because Defendant had arguable probable cause to arrest and charge Plaintiff with a violation of § 240.50(3)(c), Defendant is entitled to qualified immunity on both of Plaintiff's claims.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED. The Clerk of Court is respectfully directed to close the motion at Docket No. 52 and to close the case.

Dated: March 28, 2017
      New York, New York

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**